IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


TODD CARLTON SMITH,                   )
                                      )
                  Plaintiff,          )      **CIVIL ACTION**
                                      )
v.                                    )      No.  03-3432-MLB
                                      )
WILLIAM CUMMINGS, et al.,             )
                                      )
                  Defendants.         )
_____)

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on a motion to dismiss filed by defendants Cummings, Rice, Roberts and Thomas (the state defendants).[1] (Doc. 25.)  The state defendants filed a brief in support of their motion, along with a <u>Martinez</u> report.  (Docs. 26, 27.)  Plaintiff filed a responsive brief.  (Docs. 32, 33.)[2] After a flurry of motion activity by plaintiff, the court issued an order informing the parties of its intention to treat the motion to dismiss as a motion for summary judgment.  (Doc. 49.)  With that in mind, the court invited the parties to supplement their briefs as necessary to comply with the requirements of Fed. R. Civ. P. 56.  <u>Id.</u>  The court also ordered that no additional pleadings or submissions be filed until a ruling was made on the motion for summary judgment.  <u>Id.</u>  Plaintiff availed himself of the opportunity to supplement the record.  (Doc. 65.)  He

_____

[1] On January 27, 2005, defendant Steven Lafrinere was served with process.  (Doc. 78.)  Lafrinere failed to file a timely answer, which was due on February 16, 2005.  Neither has he joined in the present motion.  Therefore, this order has no bearing on plaintiff's case against Lafrinere.

[2] Plaintiff filed a motion to supplement his responsive brief. (Doc. 33.)  That motion is GRANTED, and the court considered those materials in rendering this decision.

also filed a motion for permanent injunction regarding his access to various legal materials. (Doc. 79.) The state defendants' motion is GRANTED, and plaintiff's motion for permanent injunction is DENIED, for reasons set forth herein.

## I. FACTS

Plaintiff is a Florida state prisoner serving a life sentence for various violent crimes including burglary, armed robbery, and kidnaping. In 1994, while incarcerated in Florida, he carried out a contract murder on the leader of the Folk Nation prison gang - a crime for which he was subsequently convicted. Events taking their natural course, other prisoners sought to murder plaintiff in retaliation. Not desiring to meet the same fate that he had doled out to others, plaintiff threw himself on the mercy of the Florida Department of Corrections and sought official protection. Somewhere along the way, he also managed to get convicted for making written threats to a judge. Ultimately, Florida tired of dealing with plaintiff, and in order to protect him, arranged to transfer plaintiff to the Kansas Department of Corrections pursuant to the Interstate Corrections Compact, K.S.A. 76-3001 through 3003. Plaintiff agreed to the transfer. (Docs. 8 at 3-4; 27 at 5, exh. B.)

Plaintiff arrived in Kansas on June 5, 2002, after which he was placed in administrative segregation at the El Dorado Correctional Facility based on his violent history. Within a month, he was released from segregation and transferred to the Hutchinson Correctional Facility, where he remained in general population for approximately nine months. On March 26, 2003, he informed prison officials that he believed his life was in danger from Folk Nation

gang members, and that he wanted to return to Florida. That same day he was placed in administrative segregation for protective custody. On April 1, 2003, he was moved to the Lansing Correctional Facility, where he was once again placed in general population. (Docs. 8 at 4-5; 27 at 6.)

According to plaintiff, on the evening of April 18, 2003, defendant Lafrinere, a corrections officer at Lansing, opened plaintiff's cell door and directed plaintiff to the cell occupied by inmate Carlos Johnson. Johnson informed plaintiff that he was aware of plaintiff's having murdered a member of Folk Nation, and that Johnson would so inform Lansing's branch of Folk Nation, unless plaintiff satisfied Johnson's sexual needs. Johnson then proceeded to engage plaintiff in various homosexual acts, after which Lafrinere returned plaintiff to his own cell. According to plaintiff, this incident was essentially repeated two nights later, with Lafrinere once again directing plaintiff to Johnson's cell. Plaintiff also recounts two other times over the next day or so that he engaged in homosexual acts with Johnson, but Lafrinere was not involved in either event. Finally, on April 22, 2003, plaintiff refused further requests for homosexual favors. As a result, he claims that he was threatened and that other inmates stole some of his personal property. (Doc. 8 at 5-7.)

On April 21, 2003, during the time period that these alleged assaults occurred, plaintiff was interviewed by prison officials regarding a threatening letter he sent to a judge. Although plaintiff had successfully invoked the protective custody capabilities of the Kansas prisons while at Hutchinson, he made no effort to do so during

-3-

this meeting.  Instead, he reiterated his desire to return to Florida, and inquired whether he might be able to do so in order to face charges regarding his letter to the judge.  When told that any charges would be resolved in Kansas, plaintiff denied any knowledge of the letter.  Plaintiff claims that he failed to inform prison officials of his mistreatment out of fear that Lafrinere would retaliate against him.  However, according to the <u>Martinez</u> report, Lafrinere was terminated for attempting to bring tobacco into the prison - it had nothing to do with plaintiff.  Lafrinere's employment ended on April 27, 2003; yet, plaintiff failed to seek help until May 7, 2003.  At that time, he submitted a statement regarding the alleged sexual assaults, and asked to be placed in protective custody.  A segregation placement hearing was promptly conducted, in which plaintiff testified about the alleged sexual assaults.  Even then, however, he made no mention of Lafrinere's involvement.  (Doc.  27 exh. G at 2-5.)

Plaintiff was quickly placed in protective custody within the protective housing unit at Lansing.  It was only after he was placed in protective custody that he informed prison officials about Lafrinere's alleged involvement in his assaults.  Then, within a month of being placed in protective custody, plaintiff informed prison officials that he was no longer safe in that establishment. Specifically, based on the location of the protective housing unit and the layout of the surrounding facilities, plaintiff and other inmates in protective custody were forced to traverse an area open to general population inmates when going to medical callouts and other required events.  Plaintiff reported that he was so hated by other inmates that he did not feel safe during these brief periods of exposure.  However,

the facts show that when large groups of protective custody inmates (PC inmates) were moved, the area was cleared of general population inmates.  Similarly, when individual PC inmates were transported through the area, they were always escorted by one or more guards. Plaintiff was never attacked, but only feared that an attack might occur.  (Doc. 27 at 11-12, 15, exh G at 3-4, exh. H, exh. J.)

Nonetheless, based on his concerns, on June 9, 2003, the decision was made to transfer him to the El Dorado Correctional Facility.  At El Dorado, plaintiff was placed in long term segregation for his protection.   At  first  plaintiff  seemed  comfortable  with  these arrangements; however, his comments during his segregation reviews indicate he quickly changed his mind and either wanted out of segregation or to be returned to Florida.  These requests were denied and plaintiff was given a job as a custodian within the unit.  (Doc. 27 exh. K.)

Based on these facts and his continued segregation from the general prison population, plaintiff brought the instant action under 42 U.S.C. § 1983 seeking damages, declaratory relief, and injunctive relief.  (Doc. 27 exh. J, exh. K.)  He asserts various claims against the state defendants, who are identified as follows: 1) Elizabeth L. Rice - Unit Team Manager of the Protective Custody Unit at Lansing, where plaintiff was housed; 2) Don Thomas - Deputy Warden at the El Dorado Correctional Facility; 3) Ray Roberts - Warden at the El Dorado Correctional Facility; and 4) William Cummings - Corrections Manager at the Kansas Department of Corrections central office in Topeka. (Docs. 8 at 1-2; 27 exhs. L, N, O.)

II.   **SUMMARY JUDGMENT STANDARD: FRCP 56**

-5-

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

III. **ANALYSIS**

Since plaintiff proceeds pro se, the court will construe his pleadings liberally.[3] Hall v. Belmon, 935 F.2d 1106, 1110 (10th Cir.

---

[3] Earlier in the case, plaintiff filed a motion for appointment of counsel. (Doc. 14.) The court denied that request. (Doc. 49.) The record clearly shows that plaintiff is more than capable of representing himself in this matter. His amended complaint shows that he has successfully prosecuted four civil cases in Florida, achieving some sort of settlement in each. (Doc. 8 at 54-55.) Plaintiff also has four other cases, including three federal cases, pending in Kansas. Id. at 54. Thus, this is the ninth civil action he has brought.

In this case, he filed a 27-page original complaint. (Doc. 1.) Before an answer was filed, he amended his complaint to add defendant Lafrinere, and he expanded it to encompass 42 federal counts against

-6-

1991).  Furthermore, since plaintiff swore his complaint and brief under penalty of perjury, the court will treat the factual allegations made in those documents the same as if they were made in an affidavit. Id. at 1111.  Finally, based on plaintiff's uncontroverted allegations about his homosexual assaults by inmate Johnson, and Lafrinere's role in those incidents, the court presumes for purposes of this motion that the events occurred as plaintiff described them.  Nonetheless, there is no vicarious liability under 42 U.S.C. § 1983.  See Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003). Therefore, with respect to the state defendants, plaintiff must provide evidence of their personal involvement in violating his federally-protected rights in order to survive summary judgment.

A.  Federal Claims Against E. L. Rice

In Count 7, plaintiff claims that Rice violated various of his constitutional rights by 1) failing to properly supervise Lafrinere and inmate Johnson in order to prevent their unlawful acts; 2)

---

the various defendants in both their individual and official capacities.  Plaintiff also alleged diversity of citizenship and, on that jurisdictional basis, re-cast his federal claims under the Kansas Tort Claims Act.  He sought not only legal damages, but also declaratory and injunctive relief.

Additionally, plaintiff has engaged in extensive motion practice throughout these proceedings.  He has filed motions for injunctive relief, (Doc. 13), to certify a class pursuant to Fed. R. Civ. P. 23, (Doc. 18), for sanctions pursuant to Rule 37, (Doc. 20), to strike the Martinez report, (Doc. 22), to compel discovery, (Doc. 30), for an order directing that a mental and physical exam of the plaintiff be conducted pursuant to Rule 35, (Doc. 36), and to appoint an expert witness, (Doc. 37).  Clearly, plaintiff has the ability to read and attempt to apply the various rules that control the course of this case.  Finally, plaintiff has already taken an appeal in this case, (Doc. 50), which was denied for lack of appellate jurisdiction. (Doc. 61.)  Plaintiff has more litigation experience than many attorneys practicing before this court.  He is quite capable of representing himself.

condoning those same actions; 3) failing to pursue any corrective or remedial actions; and 4) retaliating against plaintiff for having filed a grievance based on the alleged sexual assaults. (Doc. 8 at 20.) The first three allegations are meritless, and can be quickly disposed of. The undisputed facts show that Rice was a unit team manager in the protective custody unit at Lansing during the relevant time frames. (Docs. 8 at 1; 27 exh. L.) The alleged homosexual assaults occurred in cell house B, where plaintiff and Johnson were housed, and where Lafrinere worked. (Doc. 8 at 5.) At the time of the assault, Rice had no supervisory authority over any of these people. (Doc. 27 exh. L.) Moreover, she did not learn of the alleged assaults until June 8, 2003, when plaintiff filed his grievances. (Doc. 8 at 29 ¶ 11.) By that time, Lafrinere had already been terminated. Accordingly, she had neither the opportunity nor the duty to prevent any of the alleged acts taken against plaintiff. His allegation that she condoned the assaults is likewise baseless.

With respect to his retaliation claim, plaintiff alleges that Rice transferred him to El Dorado and had him placed in administrative segregation to punish him for filing grievances. (Doc. 8 at 20.) "Classification of the plaintiff into administrative segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause." Bailey v. Shillinger, 828 F.2d 651, 652 (10th Cir. 1987). Indeed,

> "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S.

> 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466
> (1976). <u>See also</u> <u>Vitek v. Jones</u>, 445 U.S. 480,
> 493, 100 S. Ct. 1254, 1263, 63 L. Ed. 2d 552
> (1980).
>     It is plain that the transfer of an inmate
> to less amenable and more restrictive quarters
> for nonpunitive reasons is well within the terms
> of confinement ordinarily contemplated by a
> prison sentence. The phrase "administrative
> segregation," as used by the state authorities
> here, appears to be something of a catchall: it
> may be <u>used to protect the prisoner's safety</u>, to
> protect other inmates from a particular prisoner,
> to break up potentially disruptive groups of
> inmates, or simply to await later classification
> or transfer. <u>See</u> 37 Pa. Code §§ 95.104, and
> 95.106, and note 1 <u>supra</u>. <u>Accordingly,</u>
> <u>administrative segregation is the sort of</u>
> <u>confinement that inmates should reasonably</u>
> <u>anticipate receiving at some point in their</u>
> <u>incarceration</u>. This conclusion finds ample
> support in our decisions regarding parole and
> good-time credits. Both these subjects involve
> release from institutional life altogether, which
> is a far more significant change in a prisoner's
> freedoms than that at issue here, yet in
> <u>Greenholtz</u> and <u>Wolff</u> we held that neither
> situation involved an interest independently
> protected by the Due Process Clause. These
> decisions compel an identical result here.

<u>Hewitt v. Helms</u>, 459 U.S. 460, 468, 103 S. Ct. 864, 869-70, 74 L. Ed.
2d 675 (1983) (emphasis added). However, disciplining a prisoner for
asserting grievances violates his right of access to the courts, and
such retaliation forms the basis for a separate cause of action under
42 U.S.C. § 1983. <u>Smith v. Maschner</u>, 899 F.2d 940, 947 (10th Cir.
1990). Nonetheless, in order to survive summary judgment on a
retaliation claim, plaintiff must come forth with evidence that

> <u>but for</u> the retaliatory motive, the incidents to
> which he refers, including the disciplinary
> action, would not have taken place. An inmate
> claiming retaliation must allege specific facts
> showing retaliation because of the exercise of
> the prisoner's constitutional rights.

<u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998) (citations

-9-

and internal quotation marks omitted) (emphasis added).  Plaintiff falls far short of that requirement.  He relies exclusively on the temporal proximity between his filing a grievance on June 8, 2003, and Rice's recommendation that he be transferred to El Dorado the following day.  (Doc. 8 at 9, 22.)  Plaintiff conveniently fails to acknowledge that he asked to be placed in protective custody, that he belatedly informed Rice that a prison guard participated in his alleged rapes, and that he persisted in his beliefs and complaints that he was not even safe in the protective custody unit.  (Docs. 8 at 9; 27 exh. J.)  It is no wonder that, given these extraordinary circumstances, Rice recommended that he be immediately transferred to another facility for his own protection.  Indeed, it is obvious that if plaintiff had not been transferred, he would be complaining about that.  Under these facts, plaintiff cannot show that "but for" Rice's retaliatory motive, she would not have recommended his transfer to El Dorado.  Moreover, Rice had no authority to retain him in long term segregation once he left Lansing.  Thus, to the extent he blames her for his extended stay in segregation at El Dorado, this allegation is baseless.  The record shows that plaintiff's segregation status was reviewed at least monthly, and it was the El Dorado staff who determined that he should remain in segregation.  (Doc. 27 exh. K.)  Accordingly, Rice is entitled to summary judgment on Count 7.

    In Count 8, plaintiff repeats some of the claims he stated in Count 7.  Those will not be re-addressed.  Additionally, he alleges that Rice violated his constitutional rights by failing to take appropriate safety precautions when transporting him out of the protective custody unit to institutional callouts, and by failing to

take action to keep food preparation inmates from spitting and urinating in his food. (Doc. 8 at 21.) "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (alterations in original). "Moreover, he does not need to wait until he is actually assaulted before obtaining relief." Ramos v. Lamm, 639 F.2d 559, 572 (10th Cir. 1980). This right arises under the Eighth Amendment, and in order to establish his claim, plaintiff "'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting Farmer, 511 U.S. at 834). Mere negligence on the part of prison officials does not rise to the level of an Eighth Amendment violation. Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003). Instead, plaintiff must prove that Rice acted with recklessness. Id.

Plaintiff fails to satisfy his burden on this claim. It is undisputed that he was never attacked during the times that he was escorted out of the protective housing unit. Furthermore, plaintiff presents no evidence that any PC inmate had ever been assaulted while being escorted out of the unit. Thus, his entire claim is based on his personal belief that he was not safe. On the contrary, the undisputed evidence presented shows that whenever large movements of PC inmates occurred outside the unit, the area in question was cleared of general population inmates. (Doc. 27 at 15.) Additionally, when individual PC inmates were brought out of the unit, they were always

-11-

escorted by one or more guards.  Id.  Based on these facts, the court finds that plaintiff has failed to establish the objective component of his claim - that these arrangements placed him at a substantial risk of serious harm.

Likewise, plaintiff fails to establish the subjective element of his claim - that Rice knew of, and disregarded, this risk.  As noted under the objective element, there was no evidence that PC inmates had ever been attacked under these circumstances in the past.  See, e.g., Collins v. Furlong, 2001 WL 109159, at *2, (10th Cir. Feb. 8, 2001) (plaintiff satisfied subjective element of claim by showing that area of prison yard where he was assaulted was known as "the thunderdome" because of the frequency of violence perpetrated there).  Having put forth no evidence that the risk should have been obvious to Rice, either because the risk was clear through mere observation or because other incidents had occurred to make her aware that this practice was unsafe, the only evidence presented to establish Rice's awareness of the danger perceived by plaintiff was when he filed his grievance to that effect on June 8, 2003.  Indeed, plaintiff concedes this very fact in his amended complaint when he said, "Ms. E. L. Rice never knew any of the plaintiff's complaints til [sic] she received the plaintiff's inmates grievances on or about June 8, 2003."  Id. at 29. The very next day, Rice recommended that he be transferred to El Dorado in order to keep him safe.  It is clear from these facts that Rice did act promptly on plaintiff's behalf as soon as she was made aware of his concerns.  Accordingly, Rice is entitled to summary judgment on this claim.

In the remainder of Count 8, plaintiff claims that Rice failed

-12-

to take action to keep other inmates from spitting and urinating in his food. This claim fails for two reasons. First, plaintiff puts forth no evidence that anyone was actually spitting or urinating in his food. He does not claim to have personally seen it done, nor does he provide affidavits from others who saw this occur. Likewise, he fails to explain how, in the absence of eyewitnesses, he determined that these events occurred. Could he smell the urine or see the spit? The court is merely left to wonder. Thus, his allegations on this point are conclusory and insufficient to survive summary judgment. Additionally, even assuming the truth of his assertions, the uncontroverted evidence shows that Rice was not made aware of these accusations until plaintiff filed his grievances on June 8, 2003. Id. As previously discussed, she recommended his transfer the following day. Thus, to the extent plaintiff's allegations might be true, Rice took prompt and decisive action to protect him from future abuses. Rice is therefore entitled to summary judgment for all the claims under Count 8.

After thoroughly reviewing plaintiff's allegations in Counts 9-18, the court concludes that they are simply a rehash of the issues raised in Counts 7 and 8, albeit under different labels. Plaintiff repeats the same facts, but declares that the underlying activities violate different provisions of the Constitution. The merits of these claims have already been analyzed under the appropriate standards and need not be repeated. Rice is entitled to summary judgment on Counts 9-18.

B. Federal Claims against Don E. Thomas

In Counts 19-24, plaintiff regurgitates what are essentially the

-13-

same claims he made against Rice.  With possibly two exceptions, plaintiff is merely trying to hold Thomas vicariously liable for the alleged wrongful acts of Lafrinere, Johnson, and Rice.  There is no evidence that Thomas actually supervised any of these people. Plaintiff's allegations to this effect are conclusory and unsupported by any evidence.  What is clear is that Thomas was a deputy warden at El Dorado, while Lafrinere, Johnson, and Rice were all at Lansing. Moreover, since there is no vicarious liability under § 1983, all these claims must fail.  <u>Ledbetter</u>, 318 F.3d at 1187.

The first exception to this generalization about the claims against Thomas is that some of these counts, if read extremely liberally, might be construed as stating a claim for violating plaintiff's access to the courts by retaliating against him for using the grievance process.  These claims might be read as alleging that Thomas continued plaintiff's segregation in retaliation for his grievances.  However, as previously noted, placing plaintiff in administrative segregation is not a <u>per se</u> constitutional violation. <u>Bailey</u>, 828 F.2d at 652.  Moreover, plaintiff cannot possibly satisfy the requirement that he prove "but for" Thomas' retaliatory motive, plaintiff would have been released from segregation at El Dorado. <u>Peterson</u>, 149 F.3d at 1144.  The uncontroverted facts show Thomas was aware that plaintiff had been transferred from Lansing in order to keep him safe from gang violence; that plaintiff had failed to assimilate into the general population at Hutchinson and Lansing; and that plaintiff had an extraordinarily violent history, both in and out of prison.  Furthermore, the only evidence presented as to Thomas' role in keeping plaintiff in segregation were the segregation review

-14-

reports from El Dorado. (Doc. 27 exh. K.) Those reports show that Thomas was not the final decision maker on plaintiff's release from segregation. Instead, he made a recommendation as to whether plaintiff should be retained in segregation or released to the general population. Id. at 6. The final decision was actually made by the El Dorado Warden, Ray Roberts. Id. In fact, on October 3, 2003, Thomas recommended that plaintiff be released; however, Roberts decided that plaintiff should be retained in segregation.

Collectively, these facts show two things: 1) to the extent Thomas had the ability to influence a decision regarding plaintiff's release, he had plenty of evidence that plaintiff needed to be retained in segregation for his personal safety, as well as the safety of others; and, 2) even when Thomas wanted plaintiff released, Thomas' recommendation was rejected by his superior. Accordingly, the court finds that under either view, plaintiff cannot satisfy his burden of showing "but for" an unlawful retaliatory motive, Thomas would have had him released from segregation. Thomas is entitled to summary judgment on this claim.

The other exception to the court's generalized view that the claims against Thomas are impermissibly based on a theory of vicarious liability is that, in Count 24, plaintiff makes reference to his right to be sent back to Florida under the Interstate Corrections Compact. This is a theme that he has raised in various places throughout his pleadings and other filings. In Halpin v. Simmons, 2002 WL 700936, *1 (10th Cir. Apr. 24, 2002), the Tenth Circuit was faced with a case remarkably similar to this one. Halpin was a Florida prisoner sent to Kansas under the Interstate Corrections Compact. Like plaintiff,

-15-

Halpin tried to bring claims for Interstate Corrections Compact violations under 42 U.S.C. § 1983. Relying on the well-reasoned opinion of the Eighth Circuit in <u>Stewart v. McManus</u>, 924 F.2d 138 (8th Cir. 1991), the Tenth Circuit said, "[A]lleged violations of the ICC do not constitute violations of federal law and therefore are not actionable under § 1983." <u>Halpin</u>, 2002 WL 700936, at *1. Accordingly, the court will not consider plaintiff's § 1983 claims based on violations of the Interstate Corrections Compact. Thomas is entitled to summary judgment on Counts 19-25.

C. Federal Claims Against Ray Roberts

In Count 26, plaintiff claims that Roberts violated his right of access to the courts by failing to conduct an investigation of the misconduct alleged against Rice in one of plaintiff's grievances. Under the First Amendment, prisoners do have a right of access to the courts. <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1404 (10th Cir. 1996). In order to survive summary judgment on this claim, plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation." <u>Treff v. Galetka</u>, 74 F.3d 191, 194 (10th Cir. 1996). Plaintiff fails to even allege prejudice. (Doc. 8 at 38-39.) Moreover, a review of the record reveals no such prejudice. In deciding this motion, the court will consider <u>every</u> claim against the state defendants that was included in plaintiff's amended complaint. Accordingly, plaintiff will be fully heard on the matters he has attempted to bring to court. He points to no claims that he has been precluded from bringing by Roberts' alleged conduct. Therefore, Roberts is entitled to summary judgment on Count 26.

In Counts 27-32, plaintiff attempts to hold Roberts vicariously

-16-

liable for the conduct of Johnson, Lafrinere, Rice, and Thomas.  These claims fail for numerous reasons.  First, there is no vicarious liability under § 1983.  <u>Ledbetter</u>, 318 F.3d at 1187.  Furthermore, Roberts did not supervise Johnson, Lafrinere, or Rice.  (Doc. 27 exh. N.)  And finally, to the extent Roberts supervised Thomas, the court already concluded that plaintiff has failed to provide evidence that Thomas violated plaintiff's constitutional rights.  For all these reasons, Roberts is entitled to summary judgment on Counts 27-32.

Finally, in Count 33, plaintiff asserts both an access to the courts claim, and a claim that Roberts retaliated against him for using the grievance system.  As for the access to the courts claim, once again, plaintiff fails to allege prejudice; nor is any prejudice apparent from the record.  Turning to the retaliation claim, plaintiff cannot show that "but for" Roberts' retaliatory motive, Roberts would have freed him from administrative segregation.  <u>Peterson</u>, 149 F.3d at 1144.  Roberts, like Thomas, was well aware of plaintiff's violent history, both in and out of prison, as well as his failure to assimilate into the general population of every Kansas prison he had attended thus far.  Hence, Roberts is entitled to summary judgment on Count 33.

D.   Federal Claims Against William L. Cummings

In Counts 34-36 and 38-41, plaintiff largely attempts to hold Cummings vicariously liable for the acts of Johnson, Lafrinere, Rice, Thomas, and Roberts.  However, Cummings did not supervise Johnson, Lafrinere, Rice, Thomas, or Roberts.  (Doc. 27 exh. O.)  Nor did the court find any evidence of culpable conduct on their part.  And, as previously observed, there is no vicarious liability under § 1983.

Since there is no evidence that Cummings had a personal role in any misconduct, Cummings is entitled to summary judgment on Counts 34-36 and 38-41.

In Count 42 (as well as possibly Count 37), plaintiff attempts to state a claim against Cummings for interfering with his right of access to the courts. In Count 37, plaintiff complains that Cummings failed to conduct a proper investigation of some of plaintiff's grievances. Similarly, in Count 42, plaintiff complains of Cummings' role in the grievance appeal process. However, he alleges no prejudice, nor is any apparent from the record. Plaintiff is being heard on all his claims in this court. Nothing Cummings has done or failed to do has limited plaintiff's ability to present any of his claims. Accordingly, Cummings is entitled to summary judgment on these access to the court claims.

Finally, plaintiff makes mention of the Interstate Corrections Compact in several counts. As previously noted, ICC claims are not cognizable under § 1983. <u>Halpin</u>, 2002 WL 700936, at *1. Thus, these claims merit no further discussion.

E.  Claims under the Kansas Tort Claims Act

As an alternative basis for recovery, plaintiff asserts that his claims also entitle him to relief under the Kansas Tort Claims Act, K.S.A. 75-6161 <u>et seq</u>. (Doc. 8.) In order to bring those claims, plaintiff attempts to invoke this court's diversity jurisdiction under 28 U.S.C. § 1332. He asserts that, as a Florida prisoner, he is considered to be a citizen of Florida for diversity purposes. (Doc. 8 at 27-28.)

Ordinarily, prisoners are considered citizens of the state where

they were incarcerated, even if subsequently moved to another state. Hassan v. Allen, 1998 WL 339996, at *6 n.6 (10th Cir. June 24, 1998) (citing Ferrer v. Dailey, 1996 WL 731618, at *1 (10th Cir. Dec.20, 1996) and Sullivan v. Freeman, 944 F.2d 334, 337 (7th Cir.1991)). This rebuttable presumption is based on the assumption that the prisoner has no say in the transfer, and is being moved at the whim of the government. See id. By contrast, plaintiff consented to being transferred to Kansas. (Doc. 27 exh. B.)  In fact, plaintiff asserts that he won the right to be transferred to Kansas as a settlement for claims he had against the Florida Department of Corrections. (Doc. 8 at 4.)  Under those circumstances, the court concludes that plaintiff voluntarily relocated to Kansas; and, given that he is serving a life sentence, plaintiff intends to remain in Kansas indefinitely.  Thus, for diversity jurisdiction purposes, plaintiff is considered a citizen of the state of Kansas.  Since plaintiff and defendants are citizens of the same state, no diversity exists, and the court lacks diversity jurisdiction.  Moreover, having dismissed all the federal claims against these defendants, the court declines to exercise supplemental jurisdiction to hear the state law claims. Plaintiff's state law claims are therefore dismissed.

    F.  Injunctive Relief and Miscellaneous Issues

    Plaintiff belatedly filed a motion seeking a permanent injunction that would require the state defendants to provide him with an array of Florida legal materials so that he could be better prepared to seek post-conviction relief in the Florida courts. (Doc. 79.)  However, when a prisoner is transferred under the Interstate Corrections Compact, it is the sending state, rather than the receiving state,

-19-

that bears the burden of providing the prisoner with necessary legal materials. <u>Clayton v. Tansy</u>, 26 F.3d 980, 982 (10th Cir. 1993). Since Florida is the sending state, then the relevant Florida prison officials would be the proper defendants to this claim. Plaintiff "may have a valid § 1983 claim; however, if he does it should be pursued against the proper defendant in a court of proper venue." Id. The state defendants, all being Kansas prison officials, are not proper defendants to this claim. Accordingly, plaintiff's request for permanent injunction is DENIED.

Although he never raised any issues in his amended complaint regarding the effect of segregation on his gain-time credits, plaintiff mentioned this matter in his brief. (Doc. 32 at 6.) He claims that his placement in long-term segregation encroaches upon his liberty interest in earning gain-time credits. <u>Id.</u> Since this issue was never raised in his amended complaint, it is not properly before the court. Moreover, defendants would be prejudiced if forced to address new claims first raised in a response to summary judgment. In any event, however, deprivation of gain-time credits is not a proper subject for a § 1983 claim. <u>Smith</u>, 899 F.2d at 951. Thus, the court will address the matter no further.

Likewise, in his response brief plaintiff claims that defendants deprived him of personal property without due process. (Doc. 32 at 11.) However, like his gain-time credits claim, he failed to raise this claim in his amended complaint. Accordingly, it will not be considered.

Finally, plaintiff raises claims against Roberts and Cummings based on their alleged violation of Kansas regulations related to the

prison grievance process. (Doc. 8 at 37, 42, 51-52.) However, prison regulations, or the violation of those regulations, is not cognizable under § 1983 unless the conduct in question violates the Constitution. See Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259, 96 L. Ed. 2d 64 (1987). Here, plaintiff complains that Roberts and Cummings both violated K.A.R. 44-15-102(b)(3)(B) and (c)(3) because neither of their responses to his grievances contained findings of fact and conclusions drawn, as mandated by the regulations. However, the court finds no cases or other law that would support the notion that prisoners have a constitutional right to be given written findings and conclusions regarding their prison grievances. Although the Kansas regulations may direct prison officials to do that, a failure to do so does not rise to a violation of the Constitution or other federal law cognizable under § 1983. Although exhaustion of administrative remedies, which would include the prison grievance process, is mandatory before bringing suit under § 1983, the prisoner is only required to exhaust such remedies "as are available". 42 U.S.C. § 1997e(a). Thus, no particular grievance procedure is mandated under federal law. Plaintiff's claims based on these alleged violations are meritless.[4]

In sum, plaintiff's claims against the state defendants are meritless. Likewise, his request for permanent injunction (Doc. 79) is not appropriate as against these defendants. Accordingly, summary judgment shall be entered for defendants Rice, Thomas, Roberts, and

---

[4] Plaintiff also complains that Thomas and Roberts reviewed a grievance in which they were named as a party, in violation of K.A.R. 44-15-101a(f). (Doc. 8 at 35, 37.) The court rejects this claim for the same reason it rejects the other prison regulation claims.

Cummings on all claims.  The state defendants' motion to stay discovery is MOOT.  (Doc. 39.)

Plaintiff also has a number of other motions pending that are either affected by this ruling, or otherwise need to be addressed. Plaintiff filed a motion to compel discovery from the state defendants, (Doc. 30), along with a motion to strike the objections filed in response to docket entry 30.  (Doc. 35.)  Those motions are DENIED because the discovery sought may only be had from <u>parties</u> to the case. Fed. R. Civ. P. 33, 34.  As a result of this order, the state defendants are no longer parties in this litigation.  Plaintiff also requests a physical and mental examination of himself pursuant to Fed. R. Civ. P. 35.  (Doc. 36.)  Among the many reasons why this request should be denied is the fact that Rule 35 only authorizes these examinations when the mental or physical condition of a party "is in controversy."  Fed. R. Civ. P. 35(a).  Since the state defendants have been dismissed from the case and Lafrinere has failed to respond, plaintiff's mental and physical conditions are not in controversy.  His motion for physical and mental examination is therefore DENIED.  Plaintiff also filed a motion to compel defendants to answer his complaint.  (Doc. 44.)  Plaintiff is not entitled to compel an answer.  This motion is DENIED.  Citing Rule 42(a), plaintiff next asks to consolidate this case with another civil rights case he has pending before Judge Van Bebber.  (Doc. 46.)  However, he fails to point out the common questions of law or fact that would warrant such action.  This motion is also DENIED.  Continuing his extensive motion practice, plaintiff presented an unsupported motion asking this court to recuse from the case.  (Doc. 51.)  Plaintiff

failed to provide any basis for that action.  The motion is DENIED.
Undaunted by prior denials, he asks once again for appointment of
counsel. (Doc. 77.)  For reasons stated in the prior denial, and for
the reasons addressed earlier in this order, plaintiff's motion is
once again DENIED.  Finally, several motions related to the state
defendants are rendered MOOT by this order.  (Docs. 48, 67, 68, 73.)

A motion for reconsideration of this order pursuant to this
court's Rule 7.3 is not encouraged.  The standards governing motions
to reconsider are well established.  A motion to reconsider is
appropriate where the court has obviously misapprehended a party's
position or the facts or applicable law, or where the party produces
new evidence that could not have been obtained through the exercise
of reasonable diligence.  Revisiting the issues already addressed is
not the purpose of a motion to reconsider and advancing new arguments
or supporting facts which were otherwise available for presentation
when the original motion was briefed or argued is inappropriate.
Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion
shall not exceed three pages and shall strictly comply with the
standards enunciated by this court in Comeau v. Rupp.  The response
to any motion for reconsideration shall not exceed three pages.  No
reply shall be filed.

IT IS SO ORDERED.

Dated this   19th   day of April 2005, at Wichita, Kansas.


                              s/   Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE

-23-